**UNITED STATES of America,
ex rel., Plaintiff,**

**and**

**Leocadio Barajas, and Patricia Meyer,
Plaintiffs–Appellants,**

**v.**

**NORTHROP CORPORATION,
Defendant–Appellee.**

No. 92–55092.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1992.

Decided Sept. 20, 1993.

Ronald C. Stock, Law Offices of Herbert Hafif, Claremont, CA, for plaintiff-appellant.

John T. Boese, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for defendant-appellee.

Before: BROWNING, SCHROEDER, and FLETCHER, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

The question is whether the district court has jurisdiction under the False Claims Act (the Act), 31 U.S.C. § 3729 *et seq.*, over claims a qui tam plaintiff added to his complaint by amendment based on information disclosed by the United States in a criminal indictment returned after the plaintiff filed the original complaint.

## I.

Boeing Corporation selected Northrop Corporation to produce flight data transmitters for Air Force nuclear cruise missiles. Although the transmitters were required to withstand temperatures as low as −65° Fahrenheit, Northrop allegedly selected a damping fluid that solidified at −50° Fahrenheit, causing the transmitters to fail, and concealed the failure of the transmitters to meet contract requirements by omitting certain tests, falsifying other tests and test results, failing to inspect incoming components, and submitting false claims, all in violation of 31 U.S.C. § 3729(a).

Leocadio Barajas is a former Northrop employee who participated in falsifying test results. In early 1987, Barajas met with federal investigators, gave them tapes of falsified tests, and described failures of the transmitters in performance reliability verification tests. In October, 1987, Barajas and another Northrop employee, Patricia Meyer, filed a complaint for damages under the Act, alleging improper inspection procedures and falsification of test results. *See* 31 U.S.C. § 3730(b)(1) (private person with knowledge of a false claim may file suit "for the person and for the United States Government"). The complaint was filed in camera and served on the government, and further proceedings were stayed while the government determined whether to intervene and take over the action. *See* 31 U.S.C. § 3730(b)(2).[1]

---

1. If the government takes over the action, it has "primary responsibility for prosecuting the action." 31 U.S.C. § 3730(c)(1). The person who brought the action has "the right to continue as a party to the action," subject to various limitations, *id.*, and is entitled to receive 15–25% of the proceeds of the action, unless the action is based primarily on information derived from a government hearing, report, audit, or investigation, or from the news media, in which case the qui tam plaintiff is entitled to no more than 10% of the recovery. 31 U.S.C. § 3730(d)(1).

If the government chooses not to proceed with the action, "the person who initiated the action shall have the right to conduct the action," 31 U.S.C. § 3730(c)(3), and is entitled to receive 25–30% of any recovery, 31 U.S.C. § 3730(d)(2). The Act places two limitations on the qui tam plaintiff's conduct of the action: (1) the govern-

ment may request that it be served with copies of all pleadings and deposition transcripts, and the court may permit the government to "intervene at a later date on a showing of good cause," 31 U.S.C. § 3730(c)(3), and (2) the government may request a stay of discovery if such discovery would interfere with "the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts," 31 U.S.C. § 3730(c)(4).

Whether or not the government takes over the action, the court may reduce the qui tam plaintiff's share of the proceeds if the plaintiff "planned and initiated the violation of section 3729 upon which the action was brought." 31 U.S.C. § 3730(d)(3). If the plaintiff "is convicted of criminal conduct arising from his or her role in the violation of section 3729, that person shall be dismissed from the civil action and shall not receive any share of the proceeds." *Id.*

The government did so, and filed an amended complaint adopting the claim that Northrop submitted invoices for tests that were falsified or omitted. Two months after taking over the suit, the government obtained an indictment against Northrop that included both the allegations that Northrop falsified inspection procedures and test results, and allegations that Northrop used inadequate damping fluid in the transmitters. Northrop pled guilty to several counts of the indictment alleging fraudulent inspection and testing. The counts charging damping fluid fraud were dismissed. The civil case alleging fraud in inspection and testing was settled for approximately eight million dollars.[2]

The district court allowed Barajas and Meyer to sever the counts of their original complaint not adopted by the government. They then filed an amended complaint that included the damping fluid fraud allegations. Northrop filed a motion to dismiss, arguing jurisdiction over the damping fluid fraud claim was precluded by 31 U.S.C. § 3730(e)(4) because this claim had been publicly disclosed by the government in the indictment and Barajas and Meyer were not its original source. The district court granted the motion.[3]

## II.

Congress enacted the False Claims Act to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government," S.Rep. No. 345, 99th Cong., 2d Sess. 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, and chose a civil action for damages on behalf of the United States as the mechanism to encourage individuals

with knowledge of fraud to come forward.[4] Although district courts have jurisdiction over false claims actions, Congress limited the class of persons who may sue under the Act. Section § 3730(e)(4)(A) provides, "No court shall have jurisdiction over an action ... based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless ... the person bringing the action is an original source of the information." Congress defined "an original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).

To amend his complaint to include an allegation regarding deficient damping fluid, therefore, Barajas must demonstrate either that the information was not "publicly disclosed" within the meaning of the Act despite its appearance in the indictment, or, if the information was "publicly disclosed," that he was "an original source" of that information. *See Wang v. FMC Corp.,* 975 F.2d 1412, 1415–17 (9th Cir.1992).[5] We think it is possible Barajas may satisfy either or both of these prerequisites for including deficient damping fluid allegations in his false claims action. Both depend on factual findings that must be made by the district court in the first instance, and we remand so the appropriate inquiry can be made.

---

**2.** Under the Act, Barajas and Meyer are entitled to a portion of the settlement. *See* 31 U.S.C. § 3730(d) and note 1, *supra*. Northrop also paid Barajas and Meyer $750,000 in settlement of other claims.

**3.** Meyer does not appeal the dismissal of the complaint.

**4.** *See Wang v. FMC Corp.,* 975 F.2d 1412, 1419 (9th Cir.1992); *United States ex rel. Hagood v. Sonoma County Water Agency,* 929 F.2d 1416, 1420 (9th Cir.1991); S.Rep. No. 345 at 2, *reprinted in* 1986 U.S.C.C.A.N. at 5266–67 ("The proposed legislation seeks ... to encourage any individual knowing of Government fraud to bring

that information forward."); *id.* at 23–24, *reprinted in* 1986 U.S.C.C.A.N. at 5288–89 ("The Committee's overall intent in amending the *qui tam* section of the False Claims Act is to encourage more private enforcement suits.").

**5.** We review the existence of jurisdiction de novo, but we accept the district court's factual findings on jurisdictional issues unless they are clearly erroneous. *Kruso v. Int'l Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989). As plaintiff, Barajas bears the burden of establishing jurisdiction. *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir.1990).

## A. *Original Source* [6]

The district court ruled that "to qualify as an 'original source,' the relator must have sufficient direct and independent knowledge of the fraud alleged to have taken place to support a claim under the False Claims Act.... Merely providing a lead which triggers an investigation does not qualify one as an 'original source.'" The court held Barajas did not meet this test because the information he provided to the government was not sufficient in itself to establish a claim under the Act for false claims involving use of inadequate damping fluid. The court also ruled that even if Barajas had direct and independent knowledge of the damping fluid defect, he would not qualify as "an original source" because he "failed to reveal the information about the fluid/cold temperature violations to the government prior to filing [the] initial *qui tam* complaint in October 1987."

The court below relied on the opinion of the district court in *Wang v. FMC Corp.,* No. C–87–20814–WAI, 1991 WL 537020, 1991 U.S.Dist. LEXIS 6683 (N.D.Cal. April 23, 1991), *aff'd,* 975 F.2d 1412 (9th Cir.1992). On appeal, we rejected the district court's ruling that a qui tam plaintiff can be "an original source" only if he provides enough information to state a claim under the Act. We said, "To bring a *qui tam* suit, one must have had a hand in the public disclosure of allegations that are a part of one's suit." 975 F.2d at 1418.[7]

*Wang* reflects the language of the statute. The Act refers to "*an* original source," 31 U.S.C. § 3730(e)(4)(A) (emphasis added), suggesting there may be more than one original source eligible to bring suit, and provides

that when a qui tam suit taken over by the government is "based *primarily* on disclosures of specific information" for which the plaintiff was *not* an original source, 31 U.S.C. § 3730(d)(1) (emphasis added), the qui tam plaintiff is limited to 10% of the recovery.[8] The "original source" provision and the 10% provision were added to the Act on the floor of the Senate. Senator Grassley, who sponsored the Act and chaired the subcommittee that drafted it, stated the amendments would

> limit the possible portion of the judgment recoverable by a qui tam plaintiff to 10 percent or less *when the action is based primarily on public information.* This limitation will affect those persons who have brought a qui tam action *based almost entirely on information of which they did not have independent knowledge but had derived from a public source.*

132 Cong.Rec. 20536 (Aug. 11, 1986) (emphasis added); *see also id.* at 28580 (Oct. 3, 1986) (statement of Senator Grassley). The House sponsor, Representative Berman, stated, "A person is an original source if he had *some* of the information related to the claim which he made available to the government ... in advance of the false claims being publicly disclosed." *Id.* at 29322 (Oct. 7, 1986) (emphasis added). He also observed, "where ... the person qualifies as an 'original source' but where the essential elements of the case were provided to the government or news media by someone other than the qui tam plaintiff ... the court may award up to 10% of the total recovery to the qui tam plaintiff." *Id.*[9]

*Island Lighting Co.,* 912 F.2d 13, 17–18 (2d Cir. 1990); *cf. id.* at 18 (interpretations of the Act should encourage qui tam plaintiffs to bring an action "at the earliest possible time").

**6.** For purposes of this section, we assume the damping fluid information was "publicly disclosed." As we explain in section B, *infra,* however, Barajas may be able to establish that this information was not publicly disclosed within the meaning of the Act for purposes of this litigation.

**7.** We also stated "section 3730(e)(4)(A) requires a *qui tam* plaintiff to have *played some part* in his allegation's original public disclosure," 975 F.2d at 1418 (emphasis added), and stressed that "*all* those who 'directly or indirectly' disclose an allegation might qualify as its original source," *id.* at 1419 (emphasis in original). *See also United States ex rel Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.,* 944 F.2d 1149, 1160 (3d Cir.1991); *United States ex rel. Dick v. Long*

**8.** Because the government retains the right to intervene at any time in any qui tam action on a showing of good cause, 31 U.S.C. § 3730(c)(3), the 10% limitation in § 3730(d)(1) potentially applies to all qui tam suits.

**9.** To balance the incentive to bring suit provided by the "original source" and damages provisions, Congress authorized the award of attorney's fees and expenses to prevailing defendants if an action is frivolous, harassing, or vexatious. 31 U.S.C. § 3730(d)(4).

In light of the language and history of the Act, as interpreted in *Wang,* Barajas is "an original source" with respect to the proposed amendments if he (1) has some direct and independent knowledge of information on which the proposed amendments are based, and (2) voluntarily disclosed that information to the government before filing the original complaint. *See Wang,* 975 F.2d at 1417. As in *Wang,* Barajas is "an original source" with respect to a proposed amendment if he played some part, whether direct or indirect, in the public disclosure of the allegations that are the subject of the proposed amendments. *See id.* at 1418–19. The answer to this inquiry depends on the facts and circumstances of the individual case, evaluated in light of the central purpose of the Act to encourage persons with knowledge of fraud against the government to come forward with their knowledge.

The record indicates Barajas voluntarily revealed all the information he possessed prior to filing his complaint. Barajas's knowledge of the testing and inspection fraud was direct and independent because he acquired it during the course of his employment at Northrop. Further, Barajas's disclosure that Northrop falsified tests and inspections of flight data transmitters clearly "played some part" in the public disclosure of at least certain aspects of Northrop's cruise missile frauds in the civil complaint and in the indictment. However, the district court did not determine whether the information Barajas originally provided to the government "played some part" in the public disclosure of the damping fluid allegations. If the information supplied by Barajas triggered the criminal investigation that led to the damping fluid allegations, then Barajas "played some part" in the public disclosure of those allegations. We ask the court to address this question on remand.

### B. *Public Disclosure*

The factual inquiry to be made by the district court into the role Barajas's informa-tion played in the disclosure of the damping fluid information also bears directly upon whether or not there was a "public disclosure" of this information as that term is to be defined in light of *Wang.* Indeed, the two questions may turn out to be essentially the same in this case.

The district court found Barajas's damping fluid allegations were based on allegations in the indictment against Northrop. The court's finding was based on Barajas's responses to interrogatories and statements in depositions that he had no specific knowledge that the damping fluid was inadequate until after he left Northrop, and may have obtained his information on this subject from an article in the Los Angeles Times. Barajas does not dispute the court's findings. However, he argues the allegations in the indictment were not "publicly disclosed" for purposes of this litigation.

We stated in *Wang* that "[e]vidence publicly disclosed for the first time during the discovery phase of a *qui tam* suit is not barred from use in that same suit by section 3730(e)(4)(A)." 975 F.2d at 1416. In this case, the deficiency in the damping fluid was not disclosed during civil discovery, but as a result of the government's criminal investigation, which in turn may have been based on information Barajas had provided to the government. Barajas argues, and we agree, that there is no reason to draw a distinction between disclosure resulting from civil discovery by the government or a qui tam plaintiff, and disclosure resulting from a criminal investigation by the government based on information provided by a qui tam plaintiff. Such a distinction would allow the government to limit the potential recovery of qui tam plaintiffs unfairly simply by initiating a criminal investigation, and would subvert Congress's desire to combat fraud by providing broad incentives for qui tam suits. *See* note 4, *supra.*[10] Accordingly, we remand for

10. Our decision is consistent with *Stinson,* 944 F.2d at 1159–60. The qui tam plaintiff in *Stinson*—a law firm—claimed the information on which it based its suit was not publicly disclosed because it was revealed during civil discovery in an unrelated lawsuit in which Stinson was coun-sel to the defendant. *Stinson* holds that information obtained during discovery in an action not brought under the Act may not be used as the basis for an independent qui tam suit by a third party unless that third party is an original source of the information. By contrast, in this case and

the district court to determine whether the government's disclosure of the damping fluid allegations was the result of a criminal investigation that was instigated as a consequence of the information Barajas provided to the government.[11]

### III.

In addition to arguing that Barajas could not sue on the damping fluid allegations because they had been publicly disclosed and because he was not the original source of the allegations, Northrop contended in the district court that 1) Barajas cannot litigate the damping fluid allegations because he already accepted the terms of the settlement agreement that the government reached with Northrop after it intervened in Barajas's original action and 2) Barajas cannot inject the damping fluid claim into his original action over the government's objection. If the district court on remand determines Barajas was "an original source" of the damping fluid information or that the damping fluid information was not "publicly disclosed," it must then determine whether Northrop may pursue these independent arguments against Barajas's claim and decide whether they have merit.

Vacated and remanded for further proceedings. Each side will bear its own costs of appeal.

---

in *Wang,* the information was disclosed either during discovery in the qui tam action or in a related criminal investigation.

11. The record is not clear whether the information provided by Barajas that Northrop's Western Service Department (located in California) falsified inspection procedures and test results relating to flight data transmitters influenced the disclosure of the allegations that Northrop's Precision Products Division in Massachusetts used below-specification damping fluid in such transmitters. The district court did not resolve this factual question; it concluded merely that Bara-

jas did not have sufficient "direct and independent knowledge of the fraud alleged ... to support a claim under the False Claims Act." Accordingly, it remains unclear whether Barajas's information caused the government to discover evidence of possible misconduct related to damping fluid or whether that discovery was prompted by a source of information wholly independent of Barajas.