91 F.3d 158
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America ex rel. William DEVLIN, Rod Kodman,
Stanley H. Sidicane, Plaintiffs-Appellants,
v.
COUNTY OF MERCED; John Cullen; Shirley Corbin; Kathleen
Septian; Los Angeles County; Ray Garcia; State
of California; Eloise Anderson; and
Loren D. Suter, Defendants-Appellees.
 No. 95-15285.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 16, 1996.*
Decided July 11, 1996.
 
 1
 Before: PREGERSON and TROTT, Circuit Judges, and EZRA, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Appellant-Relators William Devlin, Rod Kodman and Stanley Sidicane[1] (collectively "Relators") filed a qui tam suit pursuant to the False Claims Act, 31 U.S.C.A. § 3729 et seq. (West Supp.1996), against Defendants the State of California and two officials of its Department of Social Services (DSS) (the "State Defendants"), the County of Merced and three officials of its Human Services Agency ("Merced County"), and the County of Los Angeles and one official of its Department of Public Social Services ("Los Angeles County"). The United States declined to intervene in the suit. Relators alleged that the County Defendants engaged in a series of fraudulent practices regarding the operation of their child welfare services, that these fraudulent practices resulted in the filing of false claims for reimbursement from the federal government, and that the State Defendants participated in the filing of these false claims by failing to audit or otherwise verify the accuracy of the reimbursement claims submitted by the County Defendants.
 
 
 4
 All Defendants moved to dismiss the suit for lack of subject matter jurisdiction under 31 U.S.C.A. § 3730(e)(4) (West Supp.1996), primarily arguing that the action was barred because the allegations were publicly disclosed prior to the filing of the complaint, and the Relators were not the "original source" of the information as required by section 3730(e)(4). The district court dismissed the action for lack of subject matter jurisdiction pursuant to section 3730(e)(4); it did not reach the merits of the Defendants' arguments that no false claims within the meaning of the False Claims Act were filed. This appeal by Relators followed.
 
 I.
 
 5
 We review de novo the district court's dismissal for lack of subject matter jurisdiction. Hagood v. Sonoma County Water Agency, 81 F.3d 1465, 1472 (9th Cir.1996); United States ex rel. Fine v. Chevron, U.S.A., Inc., 72 F.3d 740, 742 (9th Cir.1995) (en banc), petition for cert. filed, 64 U.S.L.W. 3642 (U.S. Mar. 11, 1996) (No. 95-1445). The district court's factual findings on all jurisdictional issues must be accepted unless clearly erroneous. Hagood, 81 F.3d at 1472; Nike, Inc. v. Comercial Iberica De Exclusivas, 20 F.3d 987, 990 (9th Cir.1994).
 
 
 6
 The False Claims Act provides penalties for one who "knowingly presents ... a false or fraudulent claim" to the government, 31 U.S.C.A. § 3729(a), and incentives to whistleblowers who expose the fraud. 31 U.S.C.A. § 3730. Section 3730 of the Act sets forth several jurisdictional bars which may preclude a qui tam plaintiff from proceeding with the suit as the government's assignee. The jurisdictional bar at issue in this case is section 3730(e)(4), which provides:
 
 
 7
 (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
 
 
 8
 (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information."
 
 
 9
 31 U.S.C.A. § 3730(e)(4).
 
 
 10
 In United States ex rel. Wang v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir.1992), we set forth the jurisdictional analysis relevant here: first, was there a "public disclosure" within the meaning of section 3730(e)(4)(A), and if there was a public disclosure, is the qui tam plaintiff an "original source" of the information. Id. at 1416. That is, "[a] qui tam plaintiff need prove his status as an 'original source' under section 3730(e)(4)(B) 'only if an exception is sought to the bar of 4(A).' " Id. (quoting United States ex rel. Hagood v. Sonoma County Water Agency, 929 F.2d 1416, 1419-20 (9th Cir.1991)); see Hagood, 81 F.3d at 1474. Coincidentally, we recited this standard again most recently in United States ex rel. Devlin v. State of California, 84 F.3d 358, No. 93-16729, slip op. at 6228 (9th Cir. May 24, 1996), a similar case brought by Relators. That case is discussed below.
 
 A. Public Disclosure
 
 11
 The district court found that the Relators' allegations had been the subject of public disclosure within the meaning of § 3730(e)(4)(A). Los Angeles County and the State Defendants presented evidence to the district court that Los Angeles County's Child Welfare Services (CWS) had been subjected to a review by the Adult and Family Services Division of the California Department of Social Services in 1989. The results of the audit and study of the CWS caseload reporting practices were reported in a document entitled, "A Study of the Accuracy of the Los Angeles County Department of Children's Services Children's Information System (hereinafter the "Case Study"), which was issued in December 1990. The Case Study was conducted for the purpose of determining the accuracy of the caseload count for all Los Angeles CWS program components. It detailed a number of errors relating to the reporting and classification of cases in the Los Angeles CWS program and recommended that Los Angeles be required to take corrective action.
 
 
 12
 The district court found that following its issuance, the Case Study was made available to the public. Pursuant to the California Public Records Act, Cal.Gov.Code § 6250 et seq. (West 1995), over 150 copies of the Case Study were sent to individuals, community and advocacy groups, and to various other interested parties throughout California. In addition, the State Defendants presented evidence that the Case Study and at least two follow-up reports were transmitted to the California Legislature between 1991 and 1992, and that the Case Study was also sent to the Department of Health and Human Services Region IX in San Francisco, the federal agency responsible for administering the various federal programs through which DSS and California's counties receive federal reimbursement for their Child Welfare Services programs. The district court further found that the Los Angeles Times had published articles dated August 20, 1990, entitled "State Backs Away From Takeover Of Child Needs," and August 11, 1990, entitled "Child Services Audit Disputed By County," which discussed the Relators' allegations.[2]
 
 
 13
 Relators assert three arguments in support of their position that their allegations were not "publicly disclosed" under section 3730(e)(4). First, they claim that neither the August 11, 1990 newspaper article nor the Case Study relates to specific claims in their complaint against the State Defendants. This contention is without merit and was aptly rejected by the district court. Relators alleged that "hundreds of false claims" were filed because Los Angeles had a number of open cases where the subject child had either run away or was known to be deceased, and that the County Defendants inflated their statistics to receive additional federal funding by engaging in certain administrative practices. The Case Study and the August 11, 1990 article specifically detailed a number of errors relating to the reporting and classification of cases in the Los Angeles CWS, which resulted in overpayment of federal funds to the County.
 
 
 14
 Second, Relators argue that the district court erred in determining that the Case Study was a publicly disclosed document because it did not fall within the specific types of disclosures enumerated in 31 U.S.C.A. § 3730(e)(4)(A).[3] However, the district court correctly determined that both the Case Study--an audit/report issued by an administrative agency which had been publicly disseminated--and the Los Angeles Times August 11, 1990 article, fell within enumerated, jurisdictional qualifications in section 3730(e)(4)(A).
 
 
 15
 Third, Relators argue that their allegations were not "based upon" the information contained in either the Case Study or the August 11, 1990 article because they had never seen or read either document prior to filing suit. See United States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339, 1347-48 (4th Cir.), cert. denied, 513 U.S. 928, 115 S.Ct. 316 (1994). In Siller, the Court of Appeals for the Fourth Circuit held that a qui tam action is only "based upon" a public disclosure, triggering the jurisdictional bar, if the relator has actually "derived from" that disclosure the knowledge of the facts underlying his action. However, in Wang, we set forth a different rule: if someone merely republishes an allegation that has already been publicly disclosed, he cannot bring a qui tam suit, even if he had direct and independent knowledge of the fraud. 975 F.2d at 1419; see also United States ex rel. Dick v. Long Island Lighting Co., 912 F.2d 13, 18 (2d Cir.1989) (if information on which a qui tam suit is based is in the "public domain," and the qui tam plaintiff was not a source of that information, then the suit is barred), cited in Wang, 975 F.2d at 1417-20.
 
 
 16
 Furthermore, the jurisdictional bar applies even if a relator's specific "factual assertions" were never before publicly disclosed, if, "fairly characterized," they relate to an "allegation" the public already knows. Wang, 975 F.2d at 1417 (citing Dick, 912 F.2d at 14); Hagood, 81 F.3d at 1473; see also United States ex rel. Springfield Terminal Ry. v. Quinn, 14 F.3d 645, 654 (D.C.Cir.1994) ("Congress sought to prohibit qui tam actions only when either the allegation of fraud or the critical elements of the fraudulent transaction themselves were in the public domain.") (emphasis in original). "Thus, the jurisdictional bar may be raised by public disclosure unaccompanied by an explicit allegation of fraud." Hagood, 81 F.3d at 1473. Here, Relators' general allegation--that Los Angeles County had engaged in several practices resulting in overpayments to the County--had already been publicly disclosed through administrative and newspaper publications. See, e.g., United States ex rel. Stinson, Lyons, Gerlin & Bustamonte, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1155-56 (3d Cir.1991) ("We read section 3730(e)(4)(A) as designed to preclude qui tam suits based on information that would have been equally available to strangers to the fraud transaction had they chosen to look for it as it was to the relator.")
 
 
 17
 Moreover, Relators' reliance upon "The False Claims Amendments Act of 1992," 138 Cong.Rec. H7978-H7980 (daily ed. Aug. 11, 1992), which contained a proposed amendment to section 3730(e)(4) but was never enacted, is not relevant here.[4]
 
 
 18
 The district court's finding that the Relators' suit was based on information already publicly disclosed was not clearly erroneous.
 
 B. Original Source
 
 19
 "Where an allegation has been publicly disclosed within the meaning of section 3730(e)(4)(A), a plaintiff may only bring a qui tam suit if he can show that (1) he has 'direct and independent knowledge of the information on which his allegation is based'; and (2) that he 'has voluntarily provided the information to the Government before filing' his qui tam action." Wang, 975 F.2d at 1417. In a recent case involving the very same Relators here, United States ex rel. Devlin v. State of California, No. 93-16729, slip op. at 6229-34, we discussed in detail what constitutes "direct and independent" knowledge for purposes of § 3730(e)(2). Citing Wang and United States ex rel. Barajas v. Northrop Corp., 5 F.3d 407 (9th Cir.1993), cert. denied, 511 U.S. 1033, 114 S.Ct. 1543 (1994), we stated that a relator has "direct and independent" knowledge if he discovers the information underlying his allegations of wrongdoing through his own labor. Devlin, slip op. at 6229-30. We accordingly concluded that Relators, in that case, lacked direct and independent knowledge because they did not discover firsthand the information underlying their allegations of fraud.[5]
 
 
 20
 Similarly, the Relators here obtained the information forming the basis of their complaint through two sources: indirectly through the DSS investigators who prepared the Case Study and directly through William Lamb, Chief of DSS's Child Welfare Services Division. Relators, admittedly with no firsthand knowledge, simply pieced together information they obtained from Lamb and presented it in the form of a qui tam lawsuit.[6] Indeed, they do not argue on appeal that they were the "original source" of the information pertinent to their allegations against the State Defendants and Los Angeles County; rather, they assert an unpersuasive policy argument that Congress intended to benefit qui tam plaintiffs like the Relators in this suit. However, Relators cannot properly be characterized as the "whistleblowing insiders" envisioned by Congress. See Wang, 975 F.2d at 1419; Devlin, slip op. at 6232-33. As we previously noted for Relators' benefit:
 
 
 21
 It is "the cooperation of individuals who are either close observers or otherwise involved in the fraudulent activity" that Congress sought to enlist through the qui tam provisions of the [False Claims Act]. Conversely, the original source requirements of § 3730(e)(4) are intended to bar parasitic suits through which a plaintiff seeks a reward even though he has contributed nothing significant to the exposure of the fraud ... [T]he FCA has been shaped by Congress's "[s]eeking the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own."
 
 
 22
 Devlin, slip op. at 6232-33 (internal citations omitted) (emphasis in original).
 
 
 23
 The district court's finding that the Relators were not the "original source" of the allegations was not clearly erroneous. Accordingly, the district court correctly determined that it lacked subject matter jurisdiction under 31 U.S.C.A. § 3730(e)(4), with respect to Relators' claims against Los Angeles County, and with respect to Relators' allegations against the State Defendants that they failed to audit or supervise Los Angeles County.
 
 II.
 
 24
 The district court made no independent findings, however, as to whether the Relators' allegations against Merced County had been publicly disclosed or whether the Relators were the original source of the information on which those allegations were based. Rather, the district court apparently grouped the County Defendants together for purposes of its jurisdictional analysis. However, the Case Study and the Los Angeles Times articles, the bases for the court's conclusion that the relevant information had been publicly disclosed, did not pertain in any way to Merced County.
 
 
 25
 Apparently recognizing the district court's failure to engage in a separate jurisdictional analysis, Merced County's primary argument on appeal is that no false claims were filed to support Relators' False Claims Act suit. However, because the district court dismissed the action for lack of subject matter jurisdiction and did not reach the merits of Merced County's alternative grounds for dismissal and/or summary judgment, we decline to review the merits of these motions here. See Davis v. United States Dep't of Housing & Urban Dev., 627 F.2d 942, 945 (9th Cir.1980) ("The arguments advanced on appeal in support of the contention that summary judgment could have been appropriate have not been considered by the district court and [this court] decline[s] to consider them in the first instance.").
 
 
 26
 Because the district court failed to separately address the jurisdictional issue as to Merced County, we remand the matter to the district court to determine whether it can properly exercise jurisdiction, and if it can, to rule on the merits of Merced County's motion to dismiss or motion for summary judgment. Moreover, as the Relators' allegations against the State Defendants involve the State's failure to audit or supervise Merced County, the district court should determine whether the Relators assert viable claims against the State Defendants.
 
 
 27
 We therefore AFFIRM the district court's dismissal of the Relators' action against Los Angeles County and the State failure to audit or supervise Los Angeles County) for lack of subject matter jurisdiction. We further VACATE the district court's ruling that it lacked subject matter jurisdiction with respect to Relators' claims against Merced County and the State Defendants (to the extent that Relators allege claims for the State's failure to audit or supervise Merced County), and REMAND for a determination of whether the district court has jurisdiction over these claims. All parties to bear their own costs on appeal.
 
 
 28
 AFFIRMED IN PART and VACATED and REMANDED IN PART.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Stanley Sidicane died after the Notice of Appeal was filed
 
 
 [2]
 The district court found that both Los Angeles Times articles pertained directly to the Relators' allegations. However, a careful review of the August 24, 1990 article reveals that while it does identify deficient areas of the Los Angeles County's Department of Children's Services, it does not suggest that the Department engaged in any problematic billing practices. The district court may have concluded that the article's contents were relevant to the Relators' claims by reading it in conjunction with the August 11, 1990 article, which specifically focused on the County's billing errors. Nevertheless, the district court incorrectly determined that the August 24, 1990 article was relevant to the analysis of whether the allegations in Relators' suit had been "publicly disclosed." Thus, only the August 11, 1990 article will be referred to in the following discussion
 
 
 [3]
 Apparently, for the first time on appeal, Relators also claim that the Case Study is not an administrative report, audit or investigation because its specific purpose was not to detect "false claims" under the False Claims Act, and because it does not bear a State of California Government publication number. Relators' Opening Brief, at 17. However, Relators' unsupported contentions do not rebut the district court's conclusion that the Case Study constituted an "administrative report."
 
 
 [4]
 The proposed amendment stated:
 No court shall have jurisdiction over [a qui tam] action ... in which all of the material facts and allegations are obtained from a news media report or reports, or a disclosure to the general public of a document or documents--(i) created by the Federal Government; (ii) filed in a lawsuit to which the Federal Government is a party; (iii) relating to an open and active investigation by the Federal Government; unless the person bringing the action is an original source of such facts and allegations.
 See 138 Cong.Rec. H7978 (daily ed. August 11, 1992).
 
 
 [5]
 We reasoned that Relators "did not see the fraud with their own eyes or obtain their knowledge of it through their own labor unmediated by anything else, but derived it secondhand from [an individual], who had firsthand knowledge of the alleged fraud as a result of his employment at [the Social Services Department of Mariposa County]." Devlin, slip op. at 6231
 
 
 [6]
 Our conclusion should sound familiar to Relators, as we stated in their previous unsuccessful appeal:
 The relators argue that their knowledge of the alleged fraud was direct because of relator Devlin's personal efforts to verify the accuracy of the information the relators obtained from Cotey [an employee of the Social Services Department of Mariposa County ("SSD") ]. It is true that Devlin contacted persons who told him that they did not receive services for which SSD allegedly billed the government. The question, however, is whether the verification Devlin obtained from these persons added anything of significance to the information the relators obtained from Cotey. We do not believe it did. The information Cotey disclosed to the relators is that SSD had fraudulently billed the government for services to persons who had not received the services, together with a description of those services and a list of the names of the persons SSD claimed to have received the services. Armed with all that information, anyone could easily have done what Devlin did: contact persons on Cotey's list and ask them whether they in fact received the services that had been described by Cotey ... Viewed in this light, the knowledge Devlin obtained did not make a genuinely valuable contribution to the exposure of the alleged fraud.
 Devlin, slip op. at 6231-32.