**UNITED STATES ex rel. Leocadio BARAJAS, Plaintiff,**

v.

**NORTHROP CORPORATION, Defendant.**

**No. CV 87–7288 AHM (KX).**

United States District Court,
C.D. California.

Feb. 9, 1999.

---

Jesse Sunny Young, Herbert Hafif Law Offices, Claremont, CA, William K. Hanagami, King Williams & Hanagami, Los Angeles, CA, Phillip E. Benson, Phillip E. Benson Law Offices, Orange, CA, Donald R. Warren, Estep & Warren, San Diego, CA, for Leocadio Barajas.

Jesse Sunny Young, Herbert Hafif Law Offices, Claremont, CA, for Patricia Meyer, U.S.

Brad D. Brian, Munger Tolles & Olson, Los Angeles, CA, William A. Molinski, Fried Frank Harris Shriver & Jacobson, Los Angeles, CA, Shannon L. Haralson, Fried Frank Harris Shriver & Jacobson, Washington, DC, for Northrop Corp.

## ORDER DENYING *QUI TAM* RELATOR'S MOTION FOR ORDER DIRECTING PAYMENT OF SHARE OF RECOVERY

MATZ, District Judge.

Through this motion, *qui tam* relator Leocadio Barajas seeks to recover $750,000 as his alleged share of the "proceeds" allegedly recovered by the Air Force in an August 1991 Agreement ("Agreement") it reached with Defendant Northrop to resolve a suspension/debarment proceeding initiated by the Air Force. Barajas argues that the money and value of the services Northrop agreed to provide the Air Force in that Agreement constitute "proceeds" of an "alternate remedy" under 31 U.S.C. § 3730(c)(5) that the Government achieved in resolution of one of Barajas' previously-filed claims under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA").

The Government opposes Barajas' motion, arguing that this Court should deny Barajas' motion for several reasons. (1) It is procedurally barred because he failed to move to reopen this case and because it is barred by a six year statute of limitations and laches. (2) The Agreement was not an "alternate remedy" under the FCA be-

cause the Government had never pursued that claim under the FCA. Instead, the Agreement simply constituted a resolution of the Air Force's suspension/debarment proceeding that enabled Northrop to continue to do business with the Air Force. (3) Even if the Agreement was an "alternate remedy," what the Air Force recovered does not amount to "proceeds" that it must share with relator. (4) Granting the motion would circumvent public policy, *i.e.*, it would permit a perpetrator of misconduct against the Government to profit beyond his entitlement and it would make it more difficult for the Government to prosecute FCA cases because contractors would be able to claim the resolution of suspension or debarment proceedings precluded them from being liable under the FCA, in contravention of statutes prohibiting the resolution of FCA cases under those procedures.[1]

Both parties acknowledge (and this Court's independent research confirmed) that no published decision addresses the question of whether an agreement reached following an administrative agency's suspension or debarment proceeding constitutes an "alternate remedy" under the FCA.

Having considered the papers submitted, the file in the case and oral argument of counsel, and good cause appearing therefor, the Court DENIES Barajas' motion.

## PRIOR PROCEEDINGS

This Court and the parties are very familiar with the complicated procedural history of this case. Thus, the Court will describe only those proceedings pertinent to resolution of the motion now before this Court.[2]

On October 30, 1987, Barajas filed his original complaint under the FCA alleging that Northrop submitted false claims to the Government when Northrop failed to comply with contract specifications requiring it to conduct tests of its nuclear Air Launched Cruise Missiles. That complaint alleged nothing about Northrop's alleged failure to comply with contract specifications requiring it to manufacture holding fluid inside the missiles that would freeze until the temperature reached 65 degrees below zero. The Government joined Barajas' complaint on February 15, 1989 and subsequently filed two amended complaints.

On June 27, 1989, the Government indicted Northrop on charges relating to (1) its failure to conduct the requisite tests and (2) its failure to manufacture holding fluid inside the missiles that would not freeze until the temperature reached 65 degrees below zero. (The fluid Northrop manufactured froze when the temperature reached 50 degrees below zero.)

On February 27, 1990, in exchange for the Government's agreement to dismiss the criminal charges against it based upon the defective fluid, Northrop pleaded guilty to several counts of the false testing allegations and agreed to pay criminal fines and penalties of approximately $17 million.

On July 10, 1989, based upon the indictment and in accordance with 48 C.F.R. § 9.407 of the Federal Acquisition Regulations, the Air Force suspended Northrop's Precision Products Division from doing business with the government.

On March 19, 1991, based upon information gleaned from the indictment—in other words, using information and allegations that the Government had been the first to place in issue—Barajas filed a "First Amended and Severed Complaint" ("FASC") in which he amended his complaint to allege that Northrop violated the FCA when it submitted claims for missiles containing the defective fluid. The Gov-

---

1. Northrop has filed no papers concerning this motion.

2. For a more extensive review of the facts underlying this case, *see* the three published opinions in *United States ex rel. Leocadio Barajas v. Northrop Corp.* 5 F.3d 407 (9th Cir. 1993); 147 F.3d 905 (9th Cir.1998); and 897 F.Supp. 1274 (C.D.Cal.1995).

ernment never joined in the FASC; nor did any of its amended complaints in its False Claims Act case include allegations concerning the defective fluid.

On July 12, 1991, the Government entered into a settlement agreement with Northrop to resolved its second amended complaint under the FCA concerning the failure to test allegations. In that settlement, Northrop agreed to pay $8 million in exchange for the dismissal of the Government's second amended FCA complaint. The Honorable David Kenyon, the judge previously assigned to this case, awarded Barajas $475,000 as his relator's share of the settlement proceeds pursuant to 31 U.S.C. § 3730(d).

To lift the suspension and to avoid debarment, on August 15, 1991, Northrop entered into an agreement with the Air Force. The Department of Justice was not a party to this agreement, which lifted Northrop's suspension on condition that Northrop would: (1) replace the defective fluid; (2) terminate employees convicted of misconduct; (3) strengthen its ethics program; (4) publicize its fraud hot line; (5) create a task force to monitor ethics compliance; and (6) reimburse the Government $250,000 for its expenses relating to the fluid replacement and $500,000 for its administrative and investigative costs regarding the defective fluid issue and the costs of the suspension proceedings. That agreement did not discuss any possible FCA liability for the defective fluid, nor did its release section release Northrop of any FCA liability.

On December 20, 1991, Judge Kenyon dismissed Barajas' FASC for lack of jurisdiction, concluding that Barajas was not the "original source" of the damping fluid allegations. On September 20, 1993, the Ninth Circuit vacated that order and remanded this case for factual findings and reconsideration of the district court's "original sources" conclusion.

In an order filed May 9, 1995 reversing his earlier determination, Judge Kenyon concluded that Barajas was indeed an original source of the defective fluid claims. *See* 897 F.Supp. 1274. Thereafter, Northrop moved to dismiss Barajas' FASC complaint. Northrop contended that its agreement with the Air Force had effectively resolved the FCA case. The Government, in an amicus brief, opposed Northrop's motion, arguing that the Air Force Agreement was not an "alternate remedy" within the meaning of 31 U.S.C. § 3730(c)(5). Although here he argues that the suspension/debarment proceeding was an alternate remedy, Barajas filed a brief joining in the Government's position.[3] Judge Kenyon never ruled upon this issue; instead, on January 26, 1996, he granted Northrop's motion to dismiss the FASC, concluding that Barajas' claim concerning the defective fluid was barred under the doctrine of *res judicata* on account of the Government's earlier settlement and release of its FCA complaint. Barajas appealed.

On June 12, 1998, the Ninth Circuit affirmed Judge Kenyon's dismissal, concluding that:

> The allegation that the damping fluid would gum up in temperatures warmer than specified was not a different claim from the one that the tests were falsified. They were alternative theories for the same claim, that Northrop had presented a false claim to the government for payment for the flight data transmitters.

147 F.3d at 911–12.

Having struck out on that effort to obtain a monetary recovery concerning the defective fluid, Barajas now seeks $750,000 as his alleged "share" of the Air Force's August 1991 Agreement with Northrop.

## DISCUSSION

**I. Whether Barajas' Motion is Procedurally Proper.**

The Government argues that Barajas' motion is procedurally barred for three

---

**3.** Significantly, Barajas did not merely file a joinder in the United States' brief, but also attached that brief to its own brief as an exhibit.

separate reasons: (1) because judgment was entered on February 13, 1996, Barajas is precluded from filing this motion until he first moves to reopen this case; (2) the motion is untimely under the six year statute of limitations set forth in 28 U.S.C. § 2401(a); and (3) even if it is timely, Barajas' delay in filing this motion was so great that it is barred by laches. The Court need not resolve any of these procedural issues because, as set forth below, even if Barajas could overcome these procedural hurdles, the Court would have to deny his motion on the merits.

## II. Whether the Air Force's Agreement with Northrop Constitutes an "Alternate Remedy" under 31 U.S.C. § 3730(c)(5).

The Government argues that the Air Force's Agreement with Northrop is not an "alternate remedy" under 31 U.S.C. § 3730(c)(5) of the FCA in which Barajas is entitled to a share as a relator. Title 31 U.S.C. § 3730(c)(5) provides as follows:

Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section. Any finding of fact or conclusion of law made in such other proceeding that has become final shall be conclusive on all parties to an action under this section. For purposes of the preceding sentence, a finding or conclusion is final if it has been finally determined on appeal to the appropriate court of the United States, if all time for filing such an appeal with respect to the finding or conclusion has

expired, or if the finding or conclusion is not subject to judicial review.

 As noted above, no published decision addresses the question of whether an agreement reached following an administrative agency's suspension or debarment proceeding constitutes an "alternate remedy" under the FCA. Accordingly, in this question of statutory construction, the Court first begins with the plain words of the statute. *Sanchez v. Pacific Powder Co.*, 147 F.3d 1097, 1099 (9th Cir.1998) ("When interpreting a statute, this court looks first to the words that Congress used.").

 Section 3730(c)(5) does not appear to be applicable to the Air Force's Agreement because the Government never actually "pursued" a "claim" under section 3730 for the defective fluid. The Government never joined in Barajas' amended FCA action concerning the defective fluid. Nor did the Agreement between Northrop and the Air Force discuss any FCA civil action concerning the defective fluid, much less provide a release applicable to any such action. Presumably that Agreement contained no reference to Barajas' FCA action concerning the defective fluid because the Government had previously settled its civil FCA action against Northrop. According to the Ninth Circuit, the release in that July 12, 1991 settlement which released "any and all . . . claims under the False Claims Act" also released any claims for the defective fluid. 147 F.3d at 908 ("It is unquestioned in this litigation that the government itself is barred by its release from pursuing any claim based on the alleged tendency of the damping fluid to gum up at 50 degrees below, because it expressly released those claims and its case was dismissed with prejudice.").[4] Northrop's subsequent negotiations with the Air Force and those parties' August

---

4. Although Barajas did not similarly release his rights, 147 F.3d at 908 (noting that Barajas did not release "the claims based on the allegations that the DC–200 damping fluid used in the [transmitters] did not meet Air

Force cold temperature performance requirements"), the Ninth Circuit's conclusion that this aspect of Barajas' claim was barred by res judicata renders that reservation of rights a nullity.

15, 1991 Agreement to replace the defective fluid and to reimburse the Government for related costs therefore was not the resolution of any civil FCA action. Given that Northrop had already been released of all FCA liability, Northrop would have had no incentive to pay additional money or agree to replace the defective fluid in settlement of a (then non-existent) FCA action.

■ Second, reading the FCA as a whole and in context, it is more reasonable to construe "alternate remedy" to mean proceedings similar to the formal administrative procedure established by the Program Fraud Civil Remedies Act ("PFCRA"), 31 U.S.C. § 3801 *et seq.* Like the FCA, the PFCRA prohibits false claims and statements (31 U.S.C. § 3802(a)), establishes civil penalties ($5,000 per claim) (*id.*), establishes detailed procedures for administrative agencies to adjudicate false claims outside of litigation in federal court under the FCA (31 U.S.C. § 3803 (titled "Hearing and determinations," and including 4.5 pages of specific procedural mechanisms for such proceedings)), authorizes the issuance of subpoenas (§ 3804), provides for judicial review (§ 3805), and requires that each agency promulgate rules and regulations necessary to implement the Act. 31 U.S.C. § 3809. As the Government shows and Barajas does not dispute, the PFCRA was originally part of the 1986 overhaul of the FCA, referred to as the "administrative remedy" portion of the FCA. 132 *Cong. Rec.* 6474, 6479 (daily ed. September 9, 1986). Congress later severed the PFCRA from the FCA bill, but then enacted it as a separate act in 1986. Although the FCA does not limit "alternate remedy" to those administrative proceedings under the PFCRA (and this Court does not, and need not decide whether PFCRA proceedings are in fact "alternate remedies" under the FCA), given this legislative history, it is reasonable to construe section 3730's "alternate remedy" provision to encompass proceedings containing features similar to those provided in the PFCRA.

■ By way of contrast, an Air Force suspension or debarment proceeding is nothing like the more formal PFCRA procedure. Suspension proceedings are conducted informally. In fact, the Government lacks any power to compel production of evidence or the attendance of witnesses. *See Rutigliano Paper Stock Inc. v. U.S. General Services Admin.*, 967 F.Supp. 757, 767 (E.D.N.Y.1997) (quoting declaration stating that, in a debarment proceeding, a federal agency cannot "compel access to the evidence presented to the Grand Jury [which produced the indictment that triggered the debarment procedure], nor do they have any subpoena power to compel production of evidence and the attendance of any witness, let alone witnesses who have accused the contractor.... [T]he suspending official and [agency] cannot even compel contractors to appear at any meetings, let alone testify at fact-finding hearing."). *See also* 48 C.F.R. §§ 9.406 (debarment) and 9.407 (suspension), which reflect that the Government contractor who is named in such proceedings also enjoys relative few procedural rights. Given the limited procedural protections in debarment or suspension proceedings, and given that section 3730(c)(5) provides that findings of fact in "alternate remedy" proceedings are conclusive on all parties in a FCA civil action, it would make little sense for a party like Northrop ever to agree to such proceedings as a means of resolving its FCA liability.

■ Third, as the Government correctly points out, the Air Force's Agreement cannot constitute resolution of an FCA claim in an alternate proceeding because neither the Air Force nor the Department of Defense have any authority to prosecute or settle FCA claims. *Martin J. Simko Const., Inc. v. U.S.*, 852 F.2d 540, 547 (Fed.Cir.1988) ("Regardless of who initiates the suit, the Attorney General is *specifically* authorized to administer [FCA] claims for the government. *No other*

*agency is empowered to act under the statute."*) (underline added).

Barajas argues that a series of 1990 letters between the Department of Justice and the Air Force demonstrate that they were working in concert, *i.e.*, that in the suspension/debarment proceeding the Air Force was representing the Department of Justice's interest. The Government responds that this evidence shows that the two agencies were not in agreement and that the Air Force's Agreement did not fully incorporate or reflect the Department of Justice's concerns. Thus, the Government argues, these letters actually demonstrate that they were not working in concert. Based upon this Court's review of those letters and the Agreement, the Court agrees with the Government. Moreover, provisions in both the Debt Collection Act, 31 U.S.C. § 3711(b)(1),[5] and the Contract Disputes Act, 41 U.S.C. § 605(a),[6] expressly prohibit any agency compromise of fraud claims.

 Barajas' argument that if the Air Force Agreement does not constitute an "alternate remedy" under section 3730(c)(5) the primary purposes of the FCA would be thwarted is not persuasive. "Two of the primary purposes of the FCA are to alert the government as early as possible to fraud that is being committed against it and to encourage insiders to come forward with such information where they would otherwise have little incentive to do so." *U.S. ex rel. Biddle v. Board of Trustees of Leland Stanford, Jr. University*, 161 F.3d 533, 538 (9th Cir.1998). Here, Barajas' recovery of $475,000 for coming

forward with the false testing allegations (which lead the Government to the issue of the defective fluid, *see* 897 F.Supp. at 1279–81) has already achieved the purposes of the FCA.

The Court does not find that the resolution of an administrative suspension/debarment proceeding that is factually related to an FCA action can never constitute an "alternate remedy" under the FCA. Under the facts in this case, however, the Court does conclude that the FCA's allowance for a relator to recover proceeds from an "alternate remedy" does not apply to the Northrop–Air Force Agreement. Accordingly, the Court denies Barajas' motion for a relator's share.[7]

## CONCLUSION

For all the above reasons, and good cause appearing therefor, the Court DENIES *qui tam* relator's motion for an order directing payment of share of recovery.

IT IS SO ORDERED.

---

**5.** 31 U.S.C. § 3711(b)(1) provides in pertinent part: "The head of an executive, judicial, or legislative agency may not act under subsection (a)(2) [concerning settlement of claims over $100,000] or (3) [concerning collection of claims over $100,000] of this section on a claim that appears to be fraudulent, false, or misrepresented by a party with an interest in the claim[.]"

**6.** 41 U.S.C. § 605(a) provides in pertinent part: "This section shall not authorize any

agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud."

**7.** Because this Court denies Barajas' motion on the ground that the Air Force Agreement is not an "alternate remedy" under the FCA, it need not decide whether Northrop's reimbursement of certain government's expenses and the value of the fluid replacement are "proceeds" to which Barajas is entitled to a share.