163 F.3d 516
 99 Cal. Daily Op. Serv. 80
 UNITED STATES of America, ex rel. Alfred AFLATOONI,
Plaintiff-Appellant,
v.
KITSAP PHYSICIANS SERVICES, a non-profit Washington
corporation; Northwest Diagnostic Imaging, Inc., a
Washington professional services corporation; Pathology
Associates of Kitsap County, a Washington Partnership;
Ronald Reimer, MD and Susan L. Reimer, his wife; Paul S.
McCullough, MD, and Jane Doe McCullough, his wife; Robert
C. Schneidler and Sharon K. Schneidler, his wife; Nancy
Koch and Richard L. Koch, her husband; Keith Hallman, MD
and Kathleen Hallman, his wife; John P. Matan, MD and Susan
J. Matan, his wife; Thomas C. Case, MD and Mary Ann Case,
his wife; Milton S. Michaelis, MD and Jane Doe Michaelis,
his wife; and Defendants Johns Doe and Janes Doe, 1-200,
Defendants-Appellees.
 No. 97-35395.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 10, 1998.
Decided Sept. 23, 1998.
Amended Jan. 4, 1999.
 
 1
 Robert L. Vogel, Washington, D.C., Frederick L. Noland, McDonald, Hoague & Bayless, Seattle, Washington, Larry G. Johnson, Seattle, Washington, for the plaintiff-appellant.
 
 
 2
 Robert G. Homchick, Davis Wright Tremaine, Seattle, Washington, for appellees Kitsap Physicians Service, Case, Koch and Schneidler.
 
 
 3
 Steve Y. Koh, Perkins Coie, Seattle, Washington, for appellees Matan.
 
 
 4
 Robert D. Steward, McNaul, Ebel, Nawrot, Helgren & Vance, Seattle, Washington, for appellees Northwest Diagnostic Imaging, Inc., Reimer, McCullough, Bergman and Michaelis.
 
 
 5
 David B. Robbins, Bennett & Bigelow, Seattle, Washington, for appellees Pathology Associates of Kitsap County and Hallman.
 
 
 6
 Appeal from the United States District Court for the Western District of Washington; J. Kelley Arnold, Magistrate Judge, Presiding. D.C. No. CV-96-5003-FDB.
 
 
 7
 Before: CANBY and TASHIMA, Circuit Judges, and EZRA, District Judge.*
 
 ORDER
 
 8
 The opinion filed September 23, 1998 is amended. The amended opinion filed concurrently with this order is substituted in its place.
 
 
 9
 With these amendments, the petition for rehearing is denied.OPINION
 
 EZRA, District Judge:
 
 10
 The United States ex rel. Dr. Alfred Aflatooni appeals the district court's dismissal for lack of jurisdiction of his qui tam action against Kitsap Physicians Service and others, alleging that they conspired to submit false claims to the Medicare program. The district court held that Dr. Aflatooni, the relator, was precluded from filing this lawsuit under the "public disclosure bar" of 31 U.S.C. § 3730(e)(4) because Aflatooni had disclosed these allegations to the news media.
 
 I.
 A. The Defendants
 
 11
 In the 1980s, the Health Care Financing Administration ("HCFA")[1] delegated responsibility for the administration of Part B of the Medicare Program in the State of Washington to Washington Physicians Service ("WPS").[2] WPS, with HCFA's approval, subcontracted with KPS to administer the Medicare program in Kitsap County, including Defendant Kitsap Physicians Service ("KPS"), to administer the Medicare program in certain regions.[3] Defendants Robert C. Schneidler, Nancy L. Koch, and Dr. Thomas C. Case are directors, officers, or employees of KPS.[4]
 
 
 12
 Defendant Northwest Diagnostic Imaging, Inc. ("NDI") is a professional services corporation located in Bremerton, Washington. Prior to December 1, 1992, NDI provided medical imaging services to patients. Defendants Dr. Ronald R. Reimer, Dr. Paul S. McCullough, Dr. Milton S. Michaelis, and Dr. Sander E. Bergman are physicians in the Bremerton area, and were also some of NDI's original investors.
 
 
 13
 Defendant Pathology Associates of Kitsap County ("PAKC") is a pathology practice in Kitsap County. Defendants Dr. Keith Hallman and Dr. John Matan were founding partners and directors of PAKC.[5]
 
 B. The Relator
 
 14
 Dr. Alfred Aflatooni is a physician in Bremerton, Washington. Since 1977, Dr. Aflatooni has provided medical services to KPS through a Participating Physician contract. Dr. Aflatooni is not, however, an officer or director of KPS.
 
 
 15
 C. Relator's Allegations Against the NDI Defendants[6]
 
 
 16
 In his Complaint, Dr. Aflatooni alleges that after NDI was formed, "NDI's shareholders referred patients for approximately 50 percent more tests of the type conducted by NDI than these same doctors had been referring prior to the formation of NDI." Opening Brief of Appellant, p. 14. Dr. Aflatooni contends that, in most cases, NDI did not keep records of the referring physician which made it impossible for KPS to monitor the referral rates of physicians used by NDI. Dr. Aflatooni maintains that, "consistent with these practices, the NDI defendants submitted or caused the submission of claims to Medicare for services that either were not medically necessary (a practice referred to as 'overutilization'), were not performed at all, or were billed as separate services when they should have been billed as one service (a practice known as 'unbundling'). The suit further alleges that KPS, the subcontracted carrier responsible for monitoring NDI's Medicare claims, was controlled by the same persons who controlled NDI, and that KPS facilitated NDI's submission of inappropriate billings." Id.
 
 
 17
 Prior to his filing of the instant lawsuit, Dr. Aflatooni disclosed his allegations to the news media, which resulted in the publication of a number of articles about NDI.
 
 
 18
 D. Relator's Allegations Against the PAKC Defendants
 
 
 19
 Defendants Dr. Keith Hallman and Dr. John Matan were founding partners and directors of PAKC. During 1987, Dr. Hallman was also on the board of directors of KPS. In April of 1987, Dr. Matan became suspicious that his partner, Dr. Hallman, was altering Dr. Matan's billing records without his knowledge or consent. In mid-April of 1987, Dr. Matan sent a letter to Robert Wilson, the President of KPS, informing him of Dr. Hallman's billing alterations. In the letter, Dr. Matan stated "that the billings for the period under my name do not reflect my personal fee profile or the actual work performed in many instances." Opening Brief of Appellant, p. 10. Mr. Wilson forwarded the letter to Dr. Thomas Case, the Chairman of the Board of KPS. After receiving the letter, Dr. Case organized a meeting with Mr. Wilson, Dr. Matan, and John Guadnola, who was outside counsel for KPS. At the meeting, it was decided that Mr. Guadnola's firm would investigate PAKC's billing practices.
 
 
 20
 Based on his review of the billing records, Mr. Guadnola concluded that there was no evidence of fraud.[7] Mr. Guadnola, Dr. Case and Dr. Wilson agreed not to report the findings to WPS (the fiscal intermediary for the State of Washington) or the Medicare Regional Office, and the case was closed.
 
 
 21
 In his qui tam suit, Dr. Aflatooni alleges that PAKC, Dr. Matan, and Dr. Hallman are liable under the False Claims Act ("FCA") for submitting false claims for payment under the Medicare program. Additionally, Dr. Aflatooni alleges that KPS was liable for covering up PAKC's fraudulent billing practices in order to protect the interests of its board member, Dr. Hallman. There is no evidence in the record that Dr. Aflatooni's allegations concerning the PAKC Defendants were disclosed in the news media prior to the filing of this lawsuit.
 
 E. The District Court's Opinion
 
 22
 In its opinion, the district court found that the internal investigation conducted by KPS did not result in public disclosure of the information which formed the basis for Dr. Aflatooni's claims against the Defendants. However, the district court did find that the allegations against the Defendants were publicly disclosed as a result of the articles which were published in the news media and Dr. Aflatooni's previous lawsuit against KPS. The district court went on to find that Dr. Aflatooni was not an original source of the allegations against the Defendants. Accordingly, the district court dismissed Dr. Aflatooni's complaint for lack of subject matter jurisdiction. Dr. Aflatooni appeals the district court's decision.
 
 II.
 
 23
 The district court's jurisdictional determination is reviewed de novo. Hagood v. Sonoma County Water Agency, 81 F.3d 1465, 1472 (9th Cir.1996). "In making its determination the district court may resolve factual disputes based on the evidence presented where the jurisdictional issue is separable from the merits of the case. The district court's findings of fact relevant to its determination of subject matter jurisdiction are reviewed for clear error." United States ex rel. Biddle v. Board of Trustees of the Leland Stanford, Jr. University, 147 F.3d 821 (9th Cir.1998).
 
 
 24
 "Congress enacted the False Claims Act to 'enhance the Government's ability to recover losses sustained as a result of fraud against the Government.' " United States ex rel. Barajas v. Northrop Corp., 5 F.3d 407, 409 (9th Cir.1993) (citation omitted). However, a district court's jurisdiction over false claims actions is specifically limited by the provisions of the FCA. 31 U.S.C. Section 3730(e)(4)(A) provides that "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing ... or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." An original source is defined as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).
 
 A. The Public Disclosure Provision
 
 25
 In this case, the district court found that Dr. Aflatooni's allegations against the Defendants had been publicly disclosed in the news media and his previous lawsuit against KPS. On appeal, Dr. Aflatooni concedes that his allegations against the NDI Defendants were disclosed in the news media and partially disclosed in his prior lawsuit against KPS. However, Dr. Aflatooni argues that there was no evidence that the allegations against the PAKC Defendants were disclosed in the news media. It is Dr. Aflatooni's position, therefore, that the district court erred in applying the public disclosure bar to all of the Defendants. Additionally, Dr. Aflatooni maintains that his allegations against the Defendants in this lawsuit are not "based upon" public disclosures because he was the person responsible for providing the information to the news media.
 
 
 26
 1. Whether Dr. Aflatooni's Actions Were "Based Upon" Public
 
 Disclosures
 
 27
 This court's recent decision in Biddle is dispositive of this issue. The relator in Biddle was an employee of Stanford University. Biddle. Stanford had a contract with a federal government agency to perform research and other activities for the agency. Shortly after he was hired, Biddle began to suspect that Stanford was overcharging the federal government for its indirect costs, i.e., its overhead. In 1990, Biddle conveyed his suspicions to a congressional subcommittee which resulted in an investigation by the General Accounting Office and the Defense Contract Audit Agency. Id. In September of 1990, Biddle was interviewed by a number of newspapers and the TV news program "20/20". In 1991, "after more than one year of extensive media coverage of Stanford's alleged overcharges, Biddle filed a qui tam suit under the False Claims Act." Id. The district court granted the defendants' motion to dismiss Biddle's complaint for lack of subject matter jurisdiction after the court concluded that Biddle's allegations were based upon public disclosures and Biddle was not an original source of the allegations contained in the complaint.
 
 
 28
 On appeal, this court affirmed the district court's order dismissing the complaint for lack of subject matter jurisdiction. We explained that a relator's allegations are "based upon" publicly disclosed information when "the allegations or transactions of the complaint have been publicly disclosed." Id. at 828. Accordingly, because the allegations contained in Biddle's complaint had already been disclosed in the media, we concluded Biddle could not bring a qui tam suit based on these allegations.[8]
 
 
 29
 In this case, Dr. Aflatooni argues that his allegations were not "based upon" publicly disclosed information because he was the source of the information provided to the news media. In support of his argument, Dr. Aflatooni cites the Fourth Circuit's decision in United States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339 (4th Cir.1994). In the Siller decision, the Fourth Circuit concluded that the term "based upon" meant "derived from" and that a qui tam action would only be barred where the relator's sole source of information was the publicly disclosed information. Id. at 1348-49.
 
 
 30
 The Fourth Circuit's decision in Siller was specifically rejected by this court in Biddle. In Biddle, we explained that the Siller decision "renders the 'original source' requirement largely superfluous" because "to say that a relator's complaint is not derived from public disclosures is to say that the relator had direct and independent knowledge of the fraud." Biddle. Moreover, this reading of the statute would make the "based upon" language merely duplicative of the "direct and independent knowledge" language, thus allowing a relator to avoid the voluntariness requirement of the original source exception. Additionally, we found that "the Siller interpretation would not further the policies underlying the FCA", namely "to provide the government with new information and to encourage persons to come forward who otherwise would not do so." Id. at 828.
 
 
 31
 Applying the Biddle decision to the facts of this case, we conclude that the district court did not err in concluding that Dr. Aflatooni's allegations were "based upon" publicly disclosed information, at least as to those allegations which were actually revealed in the news media. Where the information underlying the relator's complaint has already been publicly disclosed, the government receives no additional benefit from the relator's filing of a qui tam suit.
 
 
 32
 2. Whether the Allegations Against the PAKC Defendants Were
 
 Publicly Disclosed in the News Media
 
 33
 Dr. Aflatooni argues that the allegations pertaining to the PAKC Defendants were not publicly disclosed.[9] Consequently, Dr. Aflatooni maintains that the district court erred in finding that these allegations were publicly disclosed.
 
 
 34
 The public disclosure provision of the FCA bars claims by a relator which are based upon publicly disclosed information. Biddle, 147 F.3d at 828. However, where the relator "brings new information of fraud to the government, the relator should be rewarded regardless of how the relator came into possession of the information. The reason is that the allegations in the complaint, being previously undisclosed, are valuable to the government in remedying the fraud that is being committed against it." Id.
 
 
 35
 In this case, the parties agree that none of the allegations against the PAKC Defendants were disclosed in the news media. Therefore, the only question is whether the disclosure of the allegations against the NDI Defendants should trigger the public disclosure bar with respect to the PAKC Defendants. The Defendants argue that the bar should be triggered against the PAKC Defendants because, in his complaint, the relator has alleged that KPS and its health care providers were involved in one giant conspiracy to submit fraudulent Medicare claims.
 
 
 36
 Although Dr. Aflatooni does make some references to an overarching conspiracy in his complaint,[10] the complaint carefully breaks down the allegations with respect to each of the Defendants. Dr. Aflatooni's allegations against the NDI Defendants stem from suspicions he developed after talking with patients who had previously received medical services from NDI and after reviewing the information contained in their medical records. Dr. Aflatooni's knowledge of the allegations against the PAKC Defendants was derived from Dr. Matan's letter and his conversations with Mr. Wilson. Following this court's decision in Wang v. FMC Corp., 975 F.2d 1412 (9th Cir.1992), we find that the district court erred in concluding that the public disclosure bar applied to all Defendants, including PAKC.
 
 
 37
 The relator in Wang brought a qui tam suit against his former employer, alleging that the employer's performance of certain defense contracts was defective. Specifically, the relator asserted that his employer "defrauded the government in four separate projects." Id. at 1415. We held that because there had been no public disclosure of the allegations or evidence surrounding three of the projects, the public disclosure bar did not apply to these projects. Id. at 1415-16. However, the employer's problems with the fourth project had been disclosed in a newspaper article prior to the relator's filing of the qui tam suit. Consequently, the relator could not bring suit on this project unless he could establish that he was an original source of the allegations against his former employer. Id. at 1417.
 
 
 38
 Although Dr. Aflatooni's suit in this case does not involve separate allegations of fraud with respect to a single defendant, it does involve separate allegations of fraud against two distinct groups of defendants. The public disclosure bar cannot be applied to the PAKC Defendants unless the evidence supports the district court's finding that the allegations against those particular defendants were disclosed in the news media. However, none of the articles published about NDI discussed PAKC's alleged involvement in a conspiracy to submit fraudulent Medicare claims.[11] In fact, there is no mention of PAKC at all in the articles. Accordingly, we conclude that the district court's finding that Dr. Aflatooni's allegations against the PAKC Defendants were publicly disclosed in the news media was clearly erroneous.[12]
 
 
 39
 This conclusion is consistent with the purpose of the FCA. The FCA is designed to reward those individuals who provide the government with information regarding fraud which has not been publicly disclosed. Although the government obtained information about NDI and its alleged conspiracy with KPS through public disclosures, the government may still benefit from obtaining information about separate allegations of wrongdoing against PAKC and KPS. The public disclosure bar should not be interpreted to prohibit Aflatooni's claim against PAKC and KPS where there has been no public disclosure of the allegations against these particular defendants. We therefore reverse the portion of the district court's opinion which concluded that Dr. Aflatooni's allegations against the PAKC Defendants were publicly disclosed in the news media.
 
 
 40
 3. Whether KPS's Investigation of the PAKC Defendants
 
 
 41
 Qualifies as an "Administrative Investigation" Under the FCA
 
 
 42
 We must next consider whether the public disclosure bar applies as a result of KPS's own investigation of the PAKC Defendants.[13] Under the FCA, a district court does not have jurisdiction over a qui tam suit where the allegations underlying the suit have been publicly disclosed in an administrative investigation. 31 U.S.C. § 3730(e)(4)(A). We must therefore determine whether KPS's investigation of the PAKC Defendants qualifies as an "administrative investigation" and whether the results of this investigation were publicly disclosed.
 
 
 43
 We conclude that the internal investigation of the PAKC Defendants conducted by KPS's own lawyer did not constitute an "administrative investigation" within the meaning of section 3730(e)(4)(A). This closely-held inquiry lacked the institutionalized nature of the qualifying hearings or investigations listed by the statute. The statute speaks of "a criminal, civil, or administrative hearing, [or] a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation." Id. KPS's investigation amounted to a self-inquiry into alleged fraud of its own board member, not an institutional inquiry of the kind contemplated by the statute. Thus the inquiry, and its disclosure to Dr. Aflatooni, does not bar his claim against the PAKC Defendants.
 
 B. The "Original Source" Requirement
 1. The PAKC Defendants
 
 44
 As explained above, we find that the allegations against the PAKC Defendants were not publicly disclosed. Accordingly, we need not need not address the issue of whether Dr. Aflatooni was an original source of these allegations. See Wang, 975 F.2d at 1416. The case will be remanded to the district court so that Dr. Aflatooni may proceed with his claims against the PAKC Defendants.[14]
 
 2. The NDI Defendants
 
 45
 In its order, the district court concluded that Dr. Aflatooni was not an "original source" of the allegations against the NDI Defendants. The FCA defines an original source as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B); see also Wang, 975 F.2d at 1417. This court has addressed the "question of what constitutes 'direct and independent' knowledge for purposes of § 3730(e)(4)" in three cases. United States ex rel. Devlin v. State of California, 84 F.3d 358, 360 (9th Cir.1996). In each of these cases, we concluded that "the relator had 'direct and independent' knowledge because he had discovered the information underlying his allegations of wrongdoing through his own labor." Id.
 
 
 46
 In Wang v. FMC Corp., 975 F.2d 1412 (9th Cir.1992), we held that an engineer-relator who had been called in to study a problem with a product had "direct and independent" knowledge of the problem because "he saw [it] with his own eyes" and his knowledge was "unmediated by anything but [his] own labor." Id. at 1417. Similarly, we held in United States ex rel. Barajas v. Northrop Corp., 5 F.3d 407 (9th Cir.1993), cert. denied, 511 U.S. 1033, 114 S.Ct. 1543, 128 L.Ed.2d 195 (1994), that an employee of a government subcontractor who brought a qui tam action alleging falsified testing had "direct and independent knowledge" of the allegations because "he acquired [his knowledge] during the course of his employment [by the subcontractor]." Id. at 411.
 
 
 47
 Id. at 360-61 [alterations in original].
 
 
 48
 Finally, in the Devlin case, we held that "the relators' knowledge was not direct and independent because they did not discover firsthand the information underlying their allegations of fraud. They did not see the fraud with their own eyes or obtain their knowledge of it through their own labor unmediated by anything else, but derived it secondhand from Corey, who had firsthand knowledge of the alleged fraud as a result of his employment at SSD." Id. at 361. We rejected the relators' argument that "they had direct and independent knowledge of the information upon which their allegations were based because they had evidence of the fraud prior to the public disclosure of the allegations." Id. at 361 n. 5. "The fact that the relators had evidence of the fraud prior to the public disclosure of the allegations established that their knowledge was 'independent.' " Id. It did not, however, establish that the relators had direct knowledge of the alleged fraud. Additionally, we found that the relators' "personal efforts to verify the accuracy of the information the relators obtained from Corey ... did not make a genuinely valuable contribution to the exposure of the alleged fraud." Id. at 361-62. This conclusion was consistent with the purpose of the FCA, namely to ferret "out fraud by encouraging persons with firsthand knowledge of alleged wrongdoing to come forward." Id. at 362.
 
 
 49
 In this case, Dr. Aflatooni asserts that he learned of NDI's alleged fraudulent activities by speaking with patients who had previously received medical services from NDI, and by reviewing their medical records. Dr. Aflatooni maintains that as a result of his conversations with these patients, he concluded that NDI was performing unnecessary medical services and "billing separately for multiple procedures that should have been considered part of a single procedure." Brief of Appellant, p. 34.
 
 
 50
 As to KPS's role in NDI's alleged misconduct, Dr. Aflatooni asserts that by virtue of his position as a KPS Participating Physician, he "learned of deficiencies in NDI's auditing procedures which made it unlikely that KPS could detect overutilization by an entity such as NDI." Id. Dr. Aflatooni additionally maintains that he suspected that KPS's auditing procedures were deficient because an expert in his previous case against KPS testified that in over 50 percent of the Medicare radiology claims paid by KPS, KPS did not identify a referring physician. Dr. Aflatooni avers that based on this information, and his knowledge that several of KPS's directors also served on the board of directors for NDI, he concluded that KPS was facilitating NDI's submission of fraudulent Medicare claims.
 
 
 51
 In its order, the district court found that Dr. Aflatooni did not have direct and independent knowledge of NDI and KPS's alleged wrongdoing. In reaching this finding, the district court relied on the fact that Dr. Aflatooni could not "recall the names of any Medicare person (patient) who was charged for unnecessary medical procedures." Order, p. 3. The district court also found that even if KPS did not have proper auditing procedures in place, this was not evidence of fraud. Finally, the district court stated that the information Dr. Aflatooni obtained from his expert in his previous case against KPS was "speculative and suspicious" and did "not rise to the level of 'direct and independent knowledge' " of fraud. Order, p. 3.
 
 
 52
 Dr. Aflatooni's knowledge of the alleged fraud committed by NDI and KPS preceded the public disclosure of this information in the news media. Therefore, Dr. Aflatooni's knowledge would be considered "independent" for purposes of the FCA. The real issue is whether this information also constitutes "direct" knowledge of the alleged fraud committed by the NDI Defendants.
 
 
 53
 As noted above, to establish that Dr. Aflatooni had "direct" knowledge of NDI and KPS's alleged wrongdoing, Dr. Aflatooni must show that he had firsthand knowledge of the alleged fraud, and that he obtained this knowledge through his "own labor unmediated by anything else." Devlin, 84 F.3d at 361. The relator "bears the burden of establishing jurisdiction, and all other essential elements of his claim, by a preponderance of the evidence." Hagood, 81 F.3d at 1472; see also McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 188, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) (holding that the party seeking to invoke the jurisdiction of the court must in his pleading allege the facts essential to establish jurisdiction); Industrial Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092 (9th Cir.1990) ("The party asserting jurisdiction has the burden of proving all jurisdictional facts.").
 
 
 54
 Based on the evidence presented by Dr. Aflatooni in this case, we conclude that the district court did not clearly err in finding that Dr. Aflatooni did not have direct and independent "knowledge" of NDI and KPS's alleged fraud. Dr. Aflatooni could not recall the name of any medicare patient who was allegedly charged for unnecessary medical services. Dr. Aflatooni's allegations regarding KPS's deficient auditing procedures is not evidence of fraud, although it may suggest that KPS was negligent in the handling of some of its Medicare claims.[15] Finally, the testimony of Dr. Aflatooni's expert witness in his previous case against KPS, regarding the fact that KPS did not list the referring physician on over 50% of its Medicare reimbursements to radiologists, does not amount to anything more than pure speculation that KPS participated in NDI's alleged submission of false Medicare claims.
 
 
 55
 Dr. Aflatooni does not point to any other evidence in the record which suggests that he has "information," as opposed to speculation, of KPS or NDI's involvement in the submission of false Medicare claims. Therefore, because the purpose of the FCA is to encourage individuals with true "knowledge" of alleged wrongdoing to come forward and provide such information to the Government, the purposes of the Act would not be served by allowing a relator to maintain a qui tam suit based on pure speculation or conjecture. Accordingly, we conclude that the district court did not commit clear error in finding that Dr. Aflatooni did not have direct and independent knowledge of the alleged fraud committed by the NDI Defendants. We therefore affirm the district court's conclusion that it did not have subject matter jurisdiction over Dr. Aflatooni's allegations against the NDI Defendants.
 
 III.
 
 56
 Because the district court clearly erred in finding that the allegations against the PAKC Defendants were publicly disclosed, we reverse the portion of the district court's order in which the court concluded that it did not have subject matter jurisdiction over Dr. Aflatooni's claims against the PAKC Defendants. Additionally, we conclude that the allegations against the NDI Defendants were publicly disclosed and that Dr. Aflatooni was not an original source of these allegations. Accordingly, we affirm the portion of the district court's opinion in which the court concluded that it did not have subject matter jurisdiction over the claims against the NDI Defendants.[16] The judgment of the district court is AFFIRMED IN PART and REVERSED IN PART. The case is remanded to the district court so that Dr. Aflatooni may proceed with his claims against the PAKC Defendants. Each party shall bear his or its own costs on appeal.
 
 
 57
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 *
 Honorable David Alan Ezra, United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 The HCFA is part of the Department of Health and Human Services
 
 
 [2]
 Part A of the Medicare program covers institutional health care costs, including the cost of hospitalization. Part B covers other medical expenses, including physician services
 
 
 [3]
 KPS is a non-profit organization located in Bremerton, Washington
 
 
 [4]
 Mr. Schneidler is the President of KPS, Dr. Case was the Chairman of the Board of KPS from January 1--December 31, 1987. Ms. Koch is the Director of Medical Services at KPS
 
 
 [5]
 Dr. Matan died on June 9, 1997. His widow, who was also named as a defendant in this case, has been substituted as the Personal Representative of Dr. Matan
 
 
 [6]
 There are two sets of allegations in this case: the allegations against the NDI and KPS Defendants and the allegations against the PAKC and KPS Defendants. KPS is thus a defendant under both sets of allegations. However, KPS's alleged involvement with the NDI and PAKC Defendants is differentiated under the two sets of allegations. With regard to the NDI Defendants, Dr. Aflatooni alleges that KPS "was controlled by the same persons who controlled NDI, and that KPS facilitated NDI's submission of inappropriate billings." Opening Brief of Appellant, p. 14. With respect to the PAKC Defendants, Dr. Aflatooni alleges that KPS covered up false medicare claims submitted by PAKC in order to protect the interests of Dr. Hallman, a KPS board member. For ease of reference, we will refer to the two groups of Defendants as the NDI Defendants and the PAKC Defendants
 
 
 [7]
 During his investigation, Mr. Guadnola reviewed hundreds of billing records selected at random. Mr. Guadnola discovered "that the records would typically identify the number of slides prepared by a technician for use by the pathologist." Brief of Appellees, p. 20. After reviewing 854 billing records, Mr. Guadnola found that there were over 100 occasions where Dr. Hallman adjusted the number of slides downward, and nine occasions where he adjusted the number of slides upward. In seven of the nine cases of upward adjustment, "the pathologist had indicated that less than the actual number of slides prepared should be billed." Id. at 20-21. In the other two instances, Mr. Guadnola believed the upward adjustment was "attributable to either the fact that supplemental slides were ordered by the pathologist or misfiled records." Id. at 21
 
 
 [8]
 In reaching this conclusion, we reasoned as follows:
 Where the relator brings new information of fraud to the government, the relator should be rewarded regardless of how the relator came into possession of that information. The reason is that the allegations in the complaint, being previously undisclosed, are valuable to the government in remedying the fraud that is being committed against it. On the other hand, where the allegations of the fraud are already public knowledge, the relator confers no additional benefit upon the government by subsequently repeating the fraud allegations in the complaint. The relator should be rewarded only if he was an original source of the information.
 Id.
 
 
 [9]
 These allegations concern Dr. Hallman's alleged fraudulent billing under the Medicare program and KPS's alleged concealment of this fraud
 
 
 [10]
 Dr. Aflatooni's Disclosure Statement begins with the following sentence: "The essential fact in this matter is that the Defendants colluded to receive illegal reimbursements from Medicare for claimed procedures rendered by a select group of uniquely positioned physicians who were the shareholders or partners of the companies providing those services." R.E. at 6. In his Disclosure Statement, Dr. Aflatooni also alleged that this fraudulent scheme was allowed to occur because a number of KPS board members were also shareholders of NDI or partners in PAKC. Dr. Aflatooni additionally referenced the alleged conspiracy between KPS, NDI, and PAKC in his Amended Complaint and in his deposition, where Dr. Aflatooni stated that because of the conflicts of interest between KPS and some of NDI's shareholders and PAKC's partners, he believed there was an indirect conspiracy between PAKC and NDI to protect each others' interests
 
 
 [11]
 The only articles which referenced NDI were those contained in the Bremerton Sun and the Seattle Times
 
 
 [12]
 There is no suggestion by either party that the allegations against the PAKC Defendants were publicly disclosed in Dr. Aflatooni's prior lawsuit against KPS
 
 
 [13]
 Dr. Aflatooni concedes that, if the KPS investigation qualifies as an "administrative investigation" within the meaning of section 3730(e)(4)(A), his claim against the PAKC Defendants is barred
 
 
 [14]
 As Dr. Aflatooni's allegations against the PAKC Defendants include allegations that KPS covered up PAKC's submission of fraudulent Medicare claims in order to protect its board member, Dr. Hallman, Dr. Aflatooni will be allowed to proceed with his claims against KPS. However, Dr. Aflatooni will not be permitted to proceed with his allegations against KPS which were solely based on KPS's alleged conspiracy with the NDI Defendants
 
 
 [15]
 Negligence is not sufficient to establish liability under the FCA. Under the scienter requirement of the Act, Dr. Aflatooni must establish that the defendant had "actual knowledge" that he was submitting a false or fraudulent claim, or that the defendant acted with deliberate indifference as to the truth or falsity of the claim. Wang, 975 F.2d at 1420
 
 
 [16]
 Because the claims against Mr. Schneidler and Ms. Koch relate only to the NDI claims, we affirm the dismissal of all claims against these two defendants