**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

<table>
<tr><td>

UNITED STATES ex rel. BRIAN
HASTINGS,

          Plaintiff - Appellant,

v.

WELLS FARGO BANK, NA, INC., et al.,

          Defendants - Appellees.

</td><td>

No.    14-56314

D.C. No. 2:12-cv-03624-DDP-SS

MEMORANDUM[*]

</td></tr>
</table>

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted July 8, 2016
Pasadena, California

Before: VANASKIE,[**] MURGUIA, and WATFORD, Circuit Judges.

Relator Brian Hastings appeals from the district court's dismissal of his *qui*

*tam* suit under the False Claims Act (FCA), 31 U.S.C. §§ 3729–33. He contends

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    [**]    The Honorable Thomas I. Vanaskie, United States Circuit Judge for
the U.S. Court of Appeals for the Third Circuit, sitting by designation.

that the district court erred by applying the 1986 definition of "original source" to his suit instead of the 2010 definition. We need not resolve that issue because Hastings is not an "original source" under either definition.

**1.** Under the 1986 version of the FCA, an original source is someone who has "direct and independent knowledge of the information on which the allegations are based." *Id.* § 3730(e)(4)(B) (1986). Hastings is not an original source under this standard.

Hastings' 1997 letters to HUD consisted of speculation rather than knowledge. "[T]he purpose of the FCA is to encourage individuals with true 'knowledge' of alleged wrongdoing to come forward," so "the purposes of the Act would not be served by allowing a relator to maintain a qui tam suit based on pure speculation or conjecture." *United States ex rel. Aflatooni v. Kitsap Physicians Servs.*, 163 F.3d 516, 526 (9th Cir. 1999). The 1997 letters described the Nehemiah program in general and the possibility that it would increase the default rate for FHA-insured homes. But because these letters lacked any factual allegations of fraudulent claims, Hastings did not show "knowledge" of fraud and does not qualify as an original source. *See United States ex rel. Bly-Magee v. Premo*, 470 F.3d 914, 917 (9th Cir. 2006) (the relator was not an original source

because her declaration detailing her involvement with the company and her investigation was "fatally short of specifics").

Hastings' 2012 letter to HUD also fails to establish him as an original source under the 1986 FCA. While that letter did reflect Hastings' knowledge of alleged fraud, his knowledge was not "direct" within the meaning of the statute. Relators lack direct knowledge when they "did not see the fraud with their own eyes or obtain their knowledge of it through their own labor unmediated by anything else." *United States ex rel. Devlin v. California*, 84 F.3d 358, 361 (9th Cir. 1996). Hastings' set of real estate postings by brokers, collection of internal lending guidelines, and list of allegedly fraudulent FHA insurance claims—assembled from information available to all members of the Multiple State Listing Service—is not sufficient to establish that he had direct knowledge of a scheme to submit false claims. *See United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1020–21 (9th Cir. 1999) (a relator does not have direct knowledge when he "learned of the alleged fraud due to his status as a member of the union").

**2.** Under the 2010 version of the FCA, an original source is someone who (1) "prior to a public disclosure . . . has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based," or (2) "has knowledge that is independent of and materially adds to the publicly disclosed

allegations or transactions." 31 U.S.C. § 3730(e)(4)(B) (2010). Hastings does not qualify as an original source under either prong of the 2010 definition.

Assuming Hastings' 1997 letters to HUD preceded a public disclosure, they fail to establish him as an original source under the first prong because they did not provide the government with "information." His letters warned that an increase in the claims rate could threaten seller-funded programs, advocated for his seller-funded program as a way to avoid an increase in default rates, and urged HUD to protect the FHA-insurance program. These letters lack essential facts underlying the alleged fraud. They did not state whether Nehemiah would continue to use a structure that he alleged was in violation of HUD requirements (in fact, one of the letters indicates that Nehemiah had already revised its program at HUD's request), or whether banks would certify that loans using Nehemiah's program were compliant with HUD regulations. Without these key facts, Hastings' letters do not contain the "information" required by the statute to be an original source.

Hastings' letters also fail to show that he had "knowledge," as required under the second prong, because they stated only that "sellers will resist participation" in the FHA-insurance eligible housing market, and that use of the Nehemiah program *could* result in an "unexpected and intolerable default rate."

The 2010 FCA amendments require knowledge, but, as explained above, Hastings' 1997 letters provide only speculation.

Hastings' 2012 letter to HUD also fails to establish him as an original source under the second prong of the 2010 definition because it does not materially add to what HUD already knew about seller-funded down payment assistance programs. Allegations do not materially add to public disclosures when they provide only background information and details relating to the alleged fraud—they must add value to what the government already knew. It is clear HUD knew that seller-funded down payment assistance programs were being used in FHA-insured loans. In fact, as early as 1998 HUD reached a settlement with Nehemiah approving its down payment assistance program for use throughout the United States. In the fourteen years that followed, these programs were extensively examined in proposed rules, internal audits, a GAO report, and congressional hearings. The collection of comments, list of FHA claims, and internal lending guidelines that Hastings sent to HUD in 2012 provided only background information and examples of loans that had been made using seller-funded down payment assistance programs, so they did not materially add to what HUD already knew.

**3.** Hastings also alleges that the district court abused its discretion in denying his motion to file a second amended complaint to include additional dates.

Because the inclusion of those dates would not establish Hastings as an original source, he failed to show that the denial of leave to amend constituted an abuse of discretion. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

**AFFIRMED.**